McKinney, J.,
delivered the opinion of the court.
This hill was brought to recover certain slaves in the possession of the defendant. It appears that on the 5th of November, 1828, David 0. Williams, the maternal grandfather of complainants, made a deed of gift, by which he conveyed to Ezekiel Aikin, his executors, administrators and assigns forever, a female slave named Deljjh, and her two children, Jack and Mary, in trust, to permit his daughter, Elizabeth Aikin, then a' fame, covert, wife of Armstead Aikin, to have the use and benefit of the services of said slaves during her natural life; and, upon the further trust, “ at and upon the natural death of said Elizabeth Aikin,” to convey and deliver over said negro slaves, with their increase, to such children of “said Elizabeth, as might then be living,” &c. This deed, though acknowledged in 1828, was not registered until the 11th of Eeb., 1852, shortly before the filing of this bill. Mrs. Aikin had been previously married to one Lewis, and of that marriage, two children, David and Jane Lewis, were living at the date of the gift.
On the 24th of August, 1833, Mrs. Aikin, made an absolute conveyance, (in which her son, David Lewis, joined,) of the slave Delph, and a child born after the date of the deed of gift, to the defendant, Smith, for the alleged consideration of $350 ; and he has retained them in his possession ever since, claiming them as his own. The other children of Delph, were previously disposed of by Mrs. Aikin to other persons. Mrs. Aikin died in April, 1841, leaving six children, the complainants in this cause, surviving her, the issue of the second *308 marriage with Aikin; all of whom were under the age of twenty-one years at his death. The two children of the former marriage above mentioned, both died in the lifetime of Mrs. Aikin. The present bill was filed on the 20th of March, 1852, at which time one of the complainants was still a minor. The trus-tee, Ezekiel Aikin, died in 1850. It does not appear that he ever accepted the trust, or assumed any of the duties imposed upon him as trustee. Nor is there any proof that he ever made a conveyance of the slaves to the complainants, as was expressly made his duty to do by the terms of the deed. A deed of conveyance is exhibited in the record, executed by the defendant, Smith, bearing date 9th November, 1841, three years after the death of Mrs. Aikin, but not registered until after the filing of the bill in this case. Said deed purports to convey to complainants by name, fifty acres of land, “for the consideration of two negroes, with $245,” received from Mrs. Elizabeth Aikin, the mother of complainants. The complainants repudiate this conveyance, and allege that it was made, proved, and registered without their knowledge; that they never accepted it, and disclaim all benefit under it. The proof shows that Aikin and wife resided upon said land for many years, together with the complainants, and that it probably constituted the consideration for the two slaves to the defendant. Upon the foregoing facts the Chancellor dismissed the bill. The relief sought by the complainants is resisted upon several grounds:
1. It is insisted that the trustee having failed to convey the slaves to the complainants, on the death of Mrs. Aikin, in whom the life interest was vested, the *309 legal title remained in him; and having neglected to sue within three years from the termination of the life estate, he was barred by the statute of limitations; and consequently, the complainants are likewise barred. And to maintain this position, the case of Williams vs. Otey, 8 Humph., 563, is relied on.
We need not, in the present case, stop to enquire in what case an express limitation of an estate in fee to trustees, contained in a deed, may be cut down or restricted to a smaller estate, on the ground that, to give to such a limitation its full effect would be clearly inconsistent with the intention and purposes of the instrument. This doctrine was considered in the case of Smith vs. Thompson, 2 Swan, 386. In that case, as in the one under consideration, the interest of the trustee is expressly restricted by the terms of the instrument, to the life of the person to whom the life interest is given. But the cases are distinguishable, if indeed, it be a solid . distinction, in this, that in the present case, the trustee is directed on the death of the owner of the life interest, “ to convey ” the slaves to the persons entitled in remainder; and upon the force and effect to be given to this requirement the argument against the right of the complainants depends. Erom the failure of the trustee to make a formal conveyance of the slaves to the complainants, on the falling in of the life estate, the consequence is deduced that the legal title continued in him, and therefore the statute of limitations attached at the death of the tenant for life. We do not assent to the correctness of this conclusion. We are not by any means prepared to admit that a conveyance from the trustee was necessary to perfect the title of the com *310 plainants. The position, we think, may be well maintained that the interest, or estate, of the complainants is created, not by the execution of the power to convey, conferred upon the trustee, but by the deed itself. By the express terms of the deed, the trust estate is not to continue beyond the period required by the purposes of the trust. The legal effect of the deed is to convey a vested remainder, to take effect in possession at the death of Mrs. Aikin; and on the happening of that event, the complainants, by operation of law, instantly became vested with a legal estate, or interest, in the slaves. This would be so in the case of a will, and we see no reason why it should not be so in the case of a deed also. See 4 Kent’s Com., 204, margin. But, upon another ground, the conclusion insisted upon by the defendant’s counsel, may be successfully repelled. It is well settled, that in some cases where the legal title has been vested in a trustee, either in fee, or for a limitation of years, a conveyance or surrender of the legal estate by the trustee may be presumed; And this presumption will be made equally in the case of a deed or will. Hill on Trustees, 253. Three circumstances, it is said, are requisite to raise such presumption : 1. It must have been the duty of the trustee to convey. 2. There must be sufficient reason for the presumption. 3. The object of the presumption must be to support a just title. Ibid.
In Doe vs. Syboune, 1 Term R., 2, it is said that where trustees ought to convey to the beneficial owner it would be left to the jury to presume where such a conveyance might reasonably be made, that they had conveyed accordingly, in order to prevent a just title *311 from being defeated by a matter of form. And where there is an express direction, or provision in the trust instrument, for the conveyance of the legal estate by the trustee at a certain specified period, the duty be- , ing more cogent the presumption will more readily arise. Ib. 254. ETo very definite general rule seems to be laid down as to the number of years, or the precise circumstances which will - be considered sufficient to support such presumption. This is a conclusion to be drawn from the circumstances of each particular case. Id. 258. In England vs. Slade, 4 Term R., 682, a devise of real estate had been made to trustees, in trust for the testator’s son, and to convey to him immediately on his attaining twenty-one. The son arrived at .age in 1Y88, and in the following year he made a' lease of the property devised. In the year 1792 the lessee brought ejectment. There was no proof of any conveyance from the trustee to the son; and the court of King’s Bench held that a conveyance was to be presumed. Lord Kenyon, in delivering the judgmentj 'said: “ There is no reason why the jury should not have presumed a conveyance from the trustees to him, the son, upon his attaining the age of twenty-one, in pursuance of the trust. It' was what they were bound to do, and what a court of equity would have compelled them to have done, if they had refused. But it is rather to be presumed that they did their duty. And as to the time, the jury may be directed to presume a surrender or conveyance in much less time than twenty years.” In that case the time was but three or four years; but, in the ■ case under consideration, some eleven years had elapsed from the death *312 of Mrs. Aildn "before the commencement of the present suit. "We hold, therefore, upon the foregoing authorities, that to prevent an apparently just title from being defeated by a matter of form, a conveyance from the trustee is to be presumed in this case; and it must be taken to have been made at the point of time when it ought to have been made, the death of Mrs. Aikin.
In this view, the statute of limitations has no application to the case. The complainants were all minors at the death of their mother, when their right of action first accrued; and that disability not having been removed as to all at the time this bill was filed, they are all within the saving of the statute. 5 Yerg. R., 17. 1 Swan’s R., 501.
2. The defendant cannot repel the complainants on the ground of the non-registration of the deed of gift. He has wholly failed in liis. answer, or by proof, to place himself upon the foot of a Iona fide purchaser .without notice. To entitle him to the protection extended to an innocent purchaser, the plea, or answer’, must deny notice of complainants’ title or claim previous to the execution of the deed, and the payment of the purchase money; and, where the fact is within the defendant’s own knowledge, notice must be denied positively, fully and precisely, even though it be not charged on the other side. Story’s Eq. Pl., 662. And the notice so denied, must be notice of the existence of the complainants’ rights, and not merely notice of the instrument, or title papers, evidencing or establishing such right. Here, the denial goes no further than the defendant’s knowledge or information, “as to the paper *313 called a deed of gift,” exhibited in the bill. Notwithstanding this^ negation, the defendant may have had fall notice of the unquestioned claim or right of the complainants to the slaves in controversy, or at least, notice sufficient to have put him upon enquiry. But the proof of Armstead Aikin, and other circumstances in the case, show that, in point of fact, he had notice. At the time of the execution of the hill of sale, the witness, Aikin, informed the defendant that he had no title to the slaves, to which defendant replied, that “if he had no title, it would not hurt to sign it.” But, as the defendant has failed to put his defense upon this ground, we need not take the trouble of commenting upon the facts, tending to fix him with notice, and to show the mala fides of the transaction.
3. The pretended conveyance to the complainants for the fifty acres of land, interposes no obstacle in the way of. complainants. No such recognition, or adoption of the alleged contract of purchase between Mrs. Aikin and the defendant, or of acceptance of the pretended conveyance, appears in this record, as would be sufficient to estop even such of the complainants as were liable to be concluded by their own acts.
And, lastly, the assumption that Armstead Aikin, the father of complainants, had acquired a title to said slaves' by more than three years adverse possession, prior to the deed of gift from Williams to the trustee, is wholly unsupported by the proof.
The result is, that the complainants are entitled to have the slaves surrendered to them, and to recover the hire since the death of Mrs. Aikin.
Decree reversed.
[ Note. — The decree in the foregoing case, gives the slaves to the complainants with their reasonable hire from the death of Elizabeth Aikin, until they should be delivered up, with interest annually thereon, and annuls the contract for the sale of the land, giving the defendant his reasonable rent against the complainants, for its use and occupation since the death of Elizabeth Aikin, with interest annually thereon; remanding the cause for an account, and directing the costs of suit to be paid out of the funds arising from the hire of the slaves. Bee.] .